UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


ALDWIN McNEAL,                          )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )        05 C 0765
                                        )
DEIDRE BATTAGLIA,                       )
                                        )
                    Defendant.          )


## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on a petition for a writ of habeas corpus by

Aldwin McNeal pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the

petition is denied.

## BACKGROUND

McNeal and James Woods were indicted in Lake County, Illinois, for armed

robbery of a restaurant that took place in early April 1994 during which two men,

Corey Gerlach and Perry Austin, were murdered. Both were shot in the head with a

9-millimeter handgun.

On April 20, 1994, a police officer responded to a call directing him to an alley

behind McNeal's townhouse in Zion, Illinois. Upon his arrival, the officer spoke with

two teenaged girls with his back to the house. As they spoke, McNeal came out of the house with a brown paper bag. Seeing the officer, he dropped the bag into a nearby trash can and quickly went back into the house. The officer then took the paper bag out of the trash; inside was a loaded 9-millimeter handgun. Ballistics tests performed thereafter with the recovered firearm concluded that it was the gun used to kill Gerlach and Austin.

A few days later, Woods and McNeal's wife Regina were arrested on suspicion that they were involved in the murders. After she was arrested, Regina consented to a search of the Zion townhouse she shared with McNeal and implicated both McNeal and Woods. Police confronted Woods with Regina's accusations, and he eventually gave a statement.[1] In it, Woods told police about the murders and the contemporaneous theft of several pieces of stereo equipment from the restaurant. He stated that McNeal owned the handgun used to shoot the two victims. Woods also told police of another robbery that McNeal had conducted shortly before the murders with a teenage girl named Jennifer Giles. When Giles was interviewed, she corroborated Woods' story of the earlier robbery and told police that McNeal had beaten her and threatened to shoot her.

---

[1] For a full recitation of the facts of Woods' interrogation, see People v. Woods, 703 N.E.2d 35, 37-39 (Ill. 1998).

The search of the townhouse conducted pursuant to Regina's consent produced a bullet lodged in a wall that matched the handgun recovered from the trash can, as well as stereo equipment bearing the same brand and model number as a manual found at the restaurant where the murders occurred. Police were unable to determine if the equipment had the same serial number as the one stolen from the restaurant because that information had been scratched off of the stereo found at the townhouse.

Shortly thereafter, McNeal was arrested and confronted with the police's knowledge of the handgun and its involvement in several crimes, including the murders, and the statements given by Woods and Regina. McNeal stated that he did not remember the events of the night of the murders because he was under the influence of alcohol, heroin, and cocaine at the time but that he was "not going to go down for this by himself."

McNeal and Woods were tried separately. The evidence at McNeal's trial included the handgun and the officer's testimony regarding its discovery in the trash can; testimony of McNeal's brother, a Lake County deputy sheriff, and another man named Jimmy Gilmore that McNeal had told them that he was involved in the murders; Regina's testimony on a variety of topics including her involvement on that April night; other witnesses to particular aspects of the events of that night who corroborated Regina's account; identification of the stereo recovered from McNeal's house by a

friend of Gerlach's as that which had formerly been at the restaurant; and ballistics evidence connecting the bullets recovered from the murder scene to that found at McNeal's house and to the recovered handgun. Giles offered testimony of her involvement with McNeal at the earlier robbery. Woods' statement was not introduced at McNeal's trial.

McNeal was convicted on the armed robbery charge and both murder counts and was sentenced to 30 years for the first offense and death for the second two.[2] He appealed several aspects of his conviction and sentence to the Illinois Supreme Court, two of which are relevant to our consideration of his petition. The first focused on Regina's testimony regarding her plea agreement with the state, which provided that the state would not charge her in connection with the murders of Gerlach and Austin if she testified truthfully against McNeal. However, when the prosecutor asked her about this aspect of her arrangement at trial, she stated that she did not recall that being a part of her agreement. The second pertinent point McNeal raised before the Supreme Court concerned a special verdict form used for the first-degree murder counts. According to McNeal, the absence of specific mention of two elements of the crime on

---

[2] On January 10, 2003, then-Governor George Ryan commuted McNeal's sentence to one of natural life in prison.

the verdict form violated his Sixth Amendment rights. The Illinois Supreme Court

subsequently affirmed the conviction and sentence.

McNeal then filed a post-conviction petition in state court, asserting that he

should be afforded relief on several grounds. Three are relevant here; all pertain to his

counsel's performance at trial. First, McNeal contended that his trial counsel was

ineffective for failing to solicit testimony from James Gilmore, Tony Gilmore, Gloria

Lomack, Andrea Green, Delores Smith, Carnell Taylor, and David Pitts as part of the

defense's case. Second, he asserted that counsel should have ordered forensic tests of

blood and hair on the murder victims. Third, he argued that his attorney should have

sought to suppress evidence found during the search of the townhouse. The state

moved to dismiss the petition, and the trial court granted the motion.[3]  On

November 10, 1997, the appellate court affirmed the dismissal. On October 13, 2000,

the Illinois Supreme Court followed suit.

While McNeal's first post-conviction petition was pending, the Illinois Supreme

Court considered the issue of whether the statement Woods made to police after his

arrest should be suppressed as coerced in light of injuries he received while in police

custody. Concluding that the state had not offered clear and convincing evidence that

---

[3] As the record provided by the Attorney General in conjunction with the answer
to the § 2254 petition does not contain a copy of this filing, we do not know the basis
for the state's motion.

the injuries were not the result of physical violence designed to coerce him to confess, the Court reversed the trial court's decision not to suppress the statement and the resulting conviction and remanded the case for a new trial. People v. Woods, 703 N.E.2d 35 (Ill. 1998).

As stated earlier, McNeal and Woods were tried separately and Woods' statement was not introduced at McNeal's trial. However, after the Court decided Woods, McNeal promptly filed a second post-conviction petition seeking a retrial on the basis that the evidence obtained as a result of Woods' statement should have been suppressed at his trial. The trial court considered the petition but denied it on its merits. Both appellate courts affirmed that decision.

McNeal filed the instant petition pursuant to 28 U.S.C. § 2254 on February 7, 2005. At this court's request, the parties filed additional briefing addressing the issue of the timeliness of McNeal's filing. After reviewing the helpful and instructive papers filed pursuant to that request, we are satisfied that the petition was timely filed.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in state custody may petition a district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA further dictates that a

prisoner in state custody cannot be granted habeas relief "unless the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Schaff v. Snyder, 190 F.3d 513, 521 (7th Cir. 1999) (quoting 28 U.S.C. §§ 2254(d)(1), (2)).  For a state court decision to be "contrary to" clearly established federal law, it must be "substantially different" from relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). This situation arises if the state court either applies a rule that contradicts the governing law as set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and still arrives at a different result.  Id. at 405-06.  A state court decision involves an "unreasonable application" of clearly established Supreme Court law when it uses the correct legal rule but applies it in an objectively unreasonable manner.  Id. at 409-10.  An objectively unreasonable decision is one that lies "well outside the boundaries of permissible differences of opinion."  Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002).

Under 28 U.S.C. § 2254(d)'s "highly deferential standard for evaluating state court rulings," in deciding habeas petitions, we must give state court decisions "the benefit of the doubt."  Woodford v. Viscotti, 537 U.S. 19, 24, 123 S. Ct. 357, 360

(2002) (citation omitted). In doing so, "issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence." Lechner v. Frank, 341 F.3d 635, 638 (7th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). With these considerations in mind, we turn to McNeal's petition.

## DISCUSSION

The petition presents eight grounds for habeas relief. First, McNeal contends that the evidence used against him that originated in Woods' statement was unconstitutionally obtained. Second, he contends that the state's failure to correct Regina's testimony regarding her plea deal was tantamount to a subornation of perjury. Next, he takes issue with the adequacy of the special verdict form given to the jury regarding the first-degree murder charges. Next, he contends that the police intimidated Gloria Lomack and Delores Smith into not testifying on his behalf and into testifying for the prosecution. His other four grounds focus on his counsel's performance, which he contends was ineffective in four areas: not bringing out the inconsistency in Regina's testimony regarding the plea deal on cross-examination; not challenging the search of his townhouse that produced the stereo equipment and comparison bullet, which he contends was performed pursuant to an invalid consent; not having forensic tests performed on blood and hair samples found on Gerlach and Austin; and not presenting the testimony of witnesses he alleges could establish that

Woods, not he, was the shooter. Before we can examine the merit or lack thereof for these contentions, we must determine whether they have been presented in a procedurally sound manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999).

**1. Procedurally Defaulted Claims**

Procedural default for purposes of a state prisoner's habeas petition occurs when the petitioner fails to fairly present the issues in the petition to the state courts in the first instance. See id. The failure to do so prevents habeas review at the federal level whether the default occurs before the state trial court, on direct appeal, or during a state collateral proceeding. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000).

Procedural default can also occur if a federal claim is fairly presented to a state court, but that court declines to address it because the petitioner did not comply with a state procedural requirement. See Moore v. Bryant, 295 F.3d 771, 774 (7th Cir. 2002). A dismissal on purely procedural grounds precludes subsequent habeas review, if those grounds form a basis for the state court's decision that is independent of the federal issue and adequate to support the disposition. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991); Harris v. Reed, 489 U.S. 255, 261, 109 S. Ct. 1038, 1042 (1989).

Our review of the state court record reveals that three of McNeal's claims are procedurally defaulted. The first is his argument that his counsel was ineffective for not impeaching Regina when she did not fully disclose the terms of her plea agreement. Because this argument required review of matters outside of the trial record, it could not be brought up on direct appeal. However, nothing prevented McNeal from presenting it in his first post-conviction petition. He did not do so, despite filing three amendments to his original petition. He raised the issue for the first time before the appellate court, who deemed it forfeited at that point.[4] When invoked in this way, forfeiture supplies an independent and adequate ground for the state court's decision that McNeal could not obtain relief on this ground, which precludes our review of it under § 2254. See Szabo v. Walls, 313 F.3d 392, 397 (7th Cir. 2002).

Next, McNeal contends that the police illegally obtained Regina's consent to search their townhouse by threatening to take her children away from her. He insists that his attorney's failure to seek suppression of the evidence resulting from the search fell below professional standards of competence. McNeal presented this argument in his first post-conviction petition, but the court declined to address it because he failed

---

[4] As the state points out, though the court in fact said that this claim was waived, that term implies intentional relinquishment of the right to raise this issue. Because it is more accurate to construe what occurred as a failure to timely assert a right, we agree with the state that it should be labeled forfeiture. See People v. Blair, 831 N.E.2d 604, 615 (Ill. 2005).

to provide an affidavit from Regina to set forth the factual predicate for his allegations as mandated by the Illinois Post-Conviction Hearing Act. 725 ILCS 5/122-2. McNeal's failure to comply with this requirement results in a procedural default before the trial court that prevents review of this issue on a § 2254 petition.

Similarly, the state trial court rejected McNeal's contentions regarding the effectiveness of counsel's assistance in not eliciting testimony from James Gilmore, Tony Gilmore, Andrea Green, Carnell Taylor, and David Pitts. McNeal failed to provide any affidavits from these parties setting forth the proposed testimony he claimed counsel should have pursued. As described above, state law required the inclusion of these affidavits. Thus, it is clear from the record that there was procedural default of an argument based on these witnesses' testimony at the trial level. As a result, our review is barred.

The remaining claims advanced in McNeal's petition were properly presented to the state courts for initial consideration, so we turn to an examination of their merits.

## 2. Non-defaulted Claims

### a. Use of the Fruits of Woods' Statement at McNeal's Trial

The issue of the evidence obtained after and arguably as a result of Woods' statement is the cornerstone of McNeal's petition. The state court of appeals addressed this issue from a variety of standpoints. First, they dealt with it in the context of the

Fifth Amendment privilege against self-incrimination and noted that only Woods' Fifth

Amendment rights were at issue. Relying on Couch v. United States, 409 U.S. 322,

327, 93 S. Ct. 611, 615 (1973), the court concluded that McNeal could not invoke

Woods' "intimate and personal" right against self-incrimination.

The court went on to note unreliability of coerced statements is another rationale

for excluding evidence obtained in violation of the Fifth Amendment. See, e.g.,

Michigan v. Tucker, 417 U.S. 433, 448-49, 94 S. Ct. 2357, 2366 (1974). However, the

reliability of the statement itself was irrelevant since it was not used at McNeal's trial,

and the evidence obtained through information Woods provided was no more

unreliable than it would have been if it had been obtained some other way.

Finally, the court analyzed whether the policy of deterrence typically employed

in Fourth Amendment search and seizure jurisprudence could be applied to McNeal's

situation. The court concluded that the deterrent effect necessary to discourage police

misconduct was served by the eventual suppression of the statement from the case

against Woods; the minimal additional deterrence achieved by further exclusions

would not justify the stymying effect on law enforcement efforts.

McNeal's case presents a somewhat unusual situation in that he asserts that he

is entitled to a remedy for a claimed violation of another's constitutional rights. The

parties have not supplied, nor has our research revealed, Supreme Court cases

addressing suppression of the evidence discovered from information obtained in a coerced confession of a codefendant. Thus, the course of action chosen by the Illinois state courts cannot be contrary to federal law clearly established by Supreme Court precedent, when no such precedent exists.

With regard to the alternative avenue for relief under § 2254(d)(1), we do not think the approach of the Illinois state courts unreasonably applied the precedent available to guide an analysis of a situation such as McNeal's. It is of course axiomatic that the Fifth Amendment prevents the state from using a statement made by a party against his or her will. Furthermore, there is some support for the idea that the fruits of a confession made after, and particularly because of a constitutional violation, as opposed to a failure to employ prophylactic measures associated with the right in question, would not be admissible against the person whose rights were violated. See U.S. v. Cannon, 529 F.2d 890, 893 (7th Cir. 1976); see also Brown v. Mississippi, 297 U.S. 278, 79 S. Ct. 1202 (1936). However, this reasoning has not been applied to third parties such as McNeal; in fact, the argument that it should has been rejected by several courts of appeals. See, e.g., United States v. McDowell, 918 F.2d 1004, 1006-07 (1st Cir. 1990); United States v. Handley, 763 F.2d 1401, 1404-05 (11th Cir. 1985); United States v. Shaffner, 524 F.2d 1021, 1022 (7th Cir. 1975) (in dicta); United States v. Bruton, 416 F.2d 310, 313 (8th Cir. 1969).

The state courts' treatment of McNeal's argument used the guidance available for a situation such as this and reached a result not only reasonable from an analytical standpoint but comparable to the outcome of a similar case in the analogous setting of a Fourth Amendment violation. See Alderman v. United States, 394 U.S. 165, 89 S. Ct. 961 (1969). In Alderman, the Supreme Court held that the additional deterrent effect achievable by allowing a defendant to exclude evidence obtained by a violation of another person's constitutional rights was insufficient to outweigh the law enforcement interests at stake. Id. at 174-75, 89 S. Ct. at 967. Moreover, the rejection of arguments similar to McNeal's in the appellate decisions cited above indicates that the state court's decision does not apply federal law in an unreasonable way but in fact tracks it. Accordingly, this ground does not provide a basis for issuance of the writ.

b. *The State's Failure to Correct Regina's Testimony*

Next, McNeal contends that the state's failure to correct Regina's testimony regarding the specifics of her plea agreement was tantamount to suborning perjury. The Illinois Supreme Court rejected this claim, reasoning that any impact Regina's misstatement had was harmless when considered against the other evidence of McNeal's guilt that was presented to the jury.

To obtain habeas relief on an issue such as this one, McNeal would have to show that Regina committed perjury, that the state either knew or should have known that

her testimony was perjured, and that the jury's verdict was affected by the false testimony she offered.  See Tayborn v. Scott, 251 F.3d 1125, 1130 (7th Cir. 2001).  We agree with the state court that the impact of Regina's misstatement of the terms of her plea agreement was not likely to affect the jury's verdict.  McNeal's argument appears to be that the jury placed more weight upon Regina's testimony than it should have because she did not fully disclose her motivations for testifying at his trial.  This argument is unavailing for three reasons.

First, the agreement Regina struck with the state was to testify truthfully about the events of that April night in exchange for not being charged.  McNeal has made no contention that the agreement called for her to testify in a way that was inaccurate so as to be detrimental to him.  Second, much of the evidence adduced at trial corroborated Regina's account of what transpired, so the jury did not need to base its reliance on her testimony solely on her word that events occurred as she stated they did.  Third, as the state court noted, there was significant evidence outside of Regina's testimony that went to McNeal's guilt, such as the ballistics tests, the stereo found at the townhouse, and the statements McNeal made to his brother and Jimmy Gilmore.  As a result, McNeal has not shown that the jury's verdict was likely influenced in any significant way by the inaccurate information about Regina's agreement with the state.

As a result, even assuming that Regina's testimony about her plea agreement was false, it does not warrant habeas relief.

*c. Deficiencies in Special Verdict Forms*

On this ground, McNeal argues that the special verdict forms employed by the state on the first-degree murder counts were constitutionally inadequate. The forms, in describing the offenses for which the jury was to render a verdict, referred to the offense as first-degree murder but did not specifically enumerate two elements of the crime. The Illinois Supreme Court considered this contention and concluded that the jury had been previously instructed on the meaning of the phrase "first-degree murder" and that the prior instruction had included all of the requisite elements. The verdict form in turn used language that conformed with those instructions. McNeal has not identified any constitutional infirmity with this reasoning; neither can we discern any. Consequently, it does not provide a sufficient basis for relief under § 2254.

*d. Ineffective Assistance of Counsel for Failing to Have Blood and Hair Tested*

McNeal next contends that his counsel should have had blood and hair found on the murder victims tested to establish that they did not originate from him or Woods, thus allowing the defense to argue that neither man was present at the crime scene. In rejecting this contention, the state court focused on the fact that it would have contradicted the defense's theory that McNeal was present but did not shoot Gerlach

or Austin. The court concluded that this was a reasonable strategic decision within the bounds of professional competence.

Assistance of counsel is presumably effective, and a party bears a "heavy burden" in establishing ineffective assistance of counsel. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant's defense that the trial was unfair and the result unreasonable. Strickland v. Washington, 466 U.S. 668, 691-94 (1984).

Here, we agree with the state court that McNeal cannot establish that his attorney's decision fell below an objective standard of professional competence. Advancing the alternate theory that McNeal was not even present at the restaurant would contradict all manner of evidence advanced in the prosecution's case-in-chief and would undermine the chances that the jury would accept the defense's primary theory. Though ultimately unsuccessful, there is no indication that this was an unreasonable way for the defense to proceed. Because this decision did not constitute deficient performance, McNeal cannot establish that it rendered the trial unfair or the result unreasonable. Thus, there was nothing unreasonable about the state court's

application of the pertinent constitutional standards, so no relief is available on this basis.

*e. Ineffective Assistance of Counsel for Failing to Present Testimony from Delores Smith and Gloria Lomack*

Unlike the other putative witnesses discussed above, Delores Smith and Gloria Lomack did provide affidavits to support McNeal's post-conviction petition assertions about testimony they could have given. Thus, there is no procedural default, but neither is there merit to the argument that they warrant habeas relief.

With respect to Gloria Lomack, her affidavit states only that Lake County police attempted to coerce her into providing false testimony during the prosecution's case. However, Lomack never actually testified, so whatever she might have said had no impact on the jury's decision, and there was no reason for counsel to have her provide evidence about testimony she never gave.

McNeal contends that Delores Smith was also threatened by the police, but rather than allegedly being bullied to testify for the state, he claims she was told that she could not provide testimony in support of his case without risking the loss of her children. However, the record reflects that Smith did not take the stand, not because of any threats, but because the defense chose not to call her. It appears that McNeal concurred in this decision. Thus, the trial's fairness cannot have been affected by any

alleged misconduct by law enforcement. However, McNeal also states that the defense's decision was the result of ineffective assistance of his defense counsel. As stated above, McNeal had to satisfy both aspects of the <u>Strickland</u> analysis to be able to establish a constitutional violation. The state court concluded that his attorney's decision was an acceptable strategic decision, apparently in part because Smith's contention that the 9-millimeter handgun belonged to Woods, not McNeal, would provide the prosecution with the opportunity to present evidence of other crimes McNeal had committed using the firearm to refute her testimony. This analysis applies Supreme Court precedent regarding effective assistance of counsel reasonably and logically; as a result, there is no basis to support issuance of a writ of habeas corpus.

## CONCLUSION

Based on the foregoing analysis, McNeal's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.


_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:    March 24, 2006